UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

MAURICE WATTS, f/k/a "The Voice,"

               Plaintiff,

      - v -

AMAZON STUDIOS LLC, PARAMOUNT
TELEVISION STUDIOS LLC, and DOES 1-10

              Defendants.

----------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

1:25-cv-08642-JPO

**ORAL ARGUMENT REQUESTED**

<br>

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AMAZON STUDIOS LLC AND PARAMOUNT PICTURES CORPORATION'S[1] MOTION TO DISMISS

<br>

DAVIS WRIGHT TREMAINE LLP

Elizabeth A. McNamara
Abigail B. Everdell
Latoya A. Tyson (*Pro Hac Vice* pending)
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Tel:  (212) 489-8230
Email:  lizmcnamara@dwt.com
       abigaileverdell@dwt.com
       latoyatyson@dwt.com

*Attorneys for Defendants Amazon Studios LLC
and Paramount Pictures Corporation
(incorrectly named as Paramount Television
Studios LLC)*

---

[1] Plaintiff's Complaint incorrectly names Paramount Television Studios LLC as a Defendant.  Paramount Television Studios LLC is not a legal entity.  Paramount Television Studios is a division of Paramount Pictures Corporation.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND........................................................................................................2

    A.    The Parties .....................................................................................................2

    B.    The *Cross* Scene at Issue ..............................................................................3

    C.    The Complaint ...............................................................................................4

ARGUMENT ...............................................................................................................................5

I.    THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE USE AT
ISSUE IS RELEVANT TO DEFENDANTS' EXPRESSIVE SPEECH AND
NOT EXPLICITLY MISLEADING AS TO ITS SOURCE .................................................6

    A.    The *Rogers* Test Applies to the Call-In Scene.........................................9

    B.    The Use of "The Love Zone" and Low-Voiced Radio Host in the Call-In
Scene Is Artistically Relevant .......................................................................9

    C.    Defendants Did Not Explicitly Mislead as to the Source of *Cross*.......................12

II.    PLAINTIFF FAILS TO STATE THE ELEMENTS OF HIS CLAIMS ...........................19

    A.    Plaintiff's Federal and State Trademark Infringement, False Association,
and Unfair Competition Claims Fail Because He Does Not Plausibly Plead
Likelihood of Confusion ...............................................................................19

    B.    Plaintiff's False Association Claim Fails Because He Does Not Plead
Proximate Injury ...........................................................................................20

    C.    Plaintiff's Dilution Claim Fails Because He Does Not Plead His Mark Is
Sufficiently Famous ......................................................................................21

    D.    Plaintiff's New York Unfair Competition Claim Fails Because He Does
Not Allege Bad Faith ....................................................................................22

CONCLUSION..........................................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AM Gen. LLC v. Activision Blizzard, Inc.*,
  450 F. Supp. 3d 467 (S.D.N.Y. 2020)......................................................................16, 17, 18

*Arrow Fastener Co. v. Stanley Works*,
  59 F.3d 384 (2d Cir. 1995)......................................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007).......................................................................................5

*Boarding Sch. Rev., LLC v. Delta Career Educ. Corp.*,
  No. 11 Civ. 8921(DAB), 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) .........................11, 20

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013, *abrogated on other grounds as recognized by
  Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) .........................7, 13, 14, 17

*Brown v. Showtime Networks, Inc.*,
  394 F. Supp. 3d 418 (S.D.N.Y. 2019)...........................................................................8, 10, 12

*BSH Hausgeräte, GmbH v. Kamhi*,
  282 F. Supp. 3d 668 (S.D.N.Y. 2017)......................................................................................11

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)......................................................................................................5

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010)........................................................................................4

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
  886 F.2d 490 (2d Cir. 1989)......................................................................................................7

*DiFolco v. MSNBC Cable LLC*,
  622 F.3d 104 (2d Cir. 2010)......................................................................................................5

*DigitAlb, Sh.a v. Setplex, LLC*,
  284 F. Supp. 3d 547 (S.D.N.Y. 2018)......................................................................................22

*Down to Earth Organics, LLC v. Efron*,
  No. 22-cv-06218 (NSR), 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ........................ *passim*

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008), *abrogated on other grounds as recognized by*
   *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) ...........................................10

*Fortres Grand Corp. v. Warner Bros. Ent. Inc.*,
   763 F.3d 696 (7th Cir. 2014) ...........................................................................................12, 16, 20

*Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*,
   838 F. Supp. 2d 141 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d Cir. 2013).................22, 23

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir.2000)......................................................................................................11

*Glob. Brand Holdings, LLC v. Church & Dwight Co., Inc.*,
   No. 17-CV-6571 (KBF), 2017 WL 6515419 (S.D.N.Y. Dec. 19, 2017)...............................22

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
   826 F.3d 27 (2d Cir. 2016).......................................................................................................19

*Haas Automation, Inc. v. Steiner*,
   750 F. Supp. 3d 1107 (C.D. Cal. 2024) ...................................................................................8

*Hara v. Netflix, Inc.*,
   146 F.4th 872 (9th Cir. 2025) ..................................................................................................8

*Hara v. Netflix, Inc.*,
   No. 2:23-CV-03456-RGK-AS, 2023 WL 6812769 (C.D. Cal. Aug. 23, 2023) .....................13

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023).............................................................................................................7, 9

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
   645 F. Supp. 3d 185 (S.D.N.Y. 2022)......................................................................................19

*JTH Tax LLC v. AMC Networks Inc.*,
   694 F. Supp. 3d 315 (S.D.N.Y. 2023).............................................................................. *passim*

*LaFaro v. N.Y. City Cardiothoracic Grp., PLLC*,
   570 F.3d 471 (2d Cir. 2009).......................................................................................................5

*Lang v. Ret. Living Publ'g Co.*,
   949 F.2d 576 (2d Cir. 1991).....................................................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).................................................................................................................21

*LMNOPI v. XYZ Films, LLC*,
   449 F. Supp. 3d 86 (E.D.N.Y. 2020) ........................................................................................8

iii

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012)................................................................ *passim*

*Malletier v. Dooney & Bourke, Inc.*,
   561 F. Supp. 2d 368 (S.D.N.Y. 2008)................................................................19, 22

*Medina v. Dash Films, Inc.*,
   No. 15-CV-2551 (KBF), 2016 WL 3906714 (S.D.N.Y. July 14, 2016)........................6, 8, 14

*Millennium Access Control Tech., Inc. v. On the Gate, LLC*,
   No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017)......................21

*MiMedx Grp., Inc. v. DBW Partners LLC*,
   No. CV 17-1925 (JDB), 2018 WL 4681005 (D.D.C. Sept. 28, 2018)..............................21

*Museum of Mod. Art v. MOMACHA IP LLC*,
   339 F. Supp. 3d 361 (S.D.N.Y. 2018)...............................................................15

*Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*,
   842 F.2d 650 (2d Cir. 1988).........................................................................15

*Pepperdine Univ. v Netflix, Inc.*,
   No. 2:25-cv-01429-CV, 2025 WL 632983 (C.D. Cal. Feb. 26, 2025) ...........................8, 9, 10

*RiseandShine Corp. v. PepsiCo, Inc.*,
   41 F.4th 112 (2d Cir. 2022).........................................................................15

*Roberts v. Bliss*,
   229 F. Supp. 3d 240 (S.D.N.Y. 2017)...............................................................14, 20

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)....................................................................... *passim*

*Savin Corp. v. Savin Grp.*,
   391 F.3d 439 (2d Cir. 2004).........................................................................21

*Souza v. Exotic Island Enters., Inc.*,
   68 F.4th 99 (2d Cir. 2023) .........................................................................14

*Star Indus., Inc. v. Bacardi & Co., Ltd.*,
   412 F.3d 373 (2d Cir. 2005).........................................................................22

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   588 F.3d 97 (2d Cir.2009)...........................................................................23

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010).........................................................................19

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993)................................................................12, 15, 18

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) ........................................................................7

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*,
   809 F. Supp. 267 (S.D.N.Y. 1992) ...................................................................8

**Federal Statutes**

15 U.S.C § 1001 ..............................................................................................7

15 U.S.C § 1002 ..............................................................................................7

15 U.S.C § 1004 ..............................................................................................7

15 U.S.C § 1005 ..............................................................................................7

15 U.S.C. §§ 1051 *et seq.* ..................................................................... *passim*

15 U.S.C. § 1114 .............................................................................................4

15 U.S.C. § 1125(a) ...............................................................................4, 20, 21

15 U.S.C. § 1125(c) .........................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6).....................................................................................1

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................. *passim*

Defendants Amazon Studios LLC ("Amazon Studios") and Paramount Pictures Corporation ("Paramount," incorrectly named in the Complaint as "Paramount Television Studios LLC") (together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Defendants are two studios that produced the streaming series *Cross*, based upon the Alex Cross series of novels by James Patterson.  *Cross* follows the title character, a Washington, DC homicide detective, as he works to find a serial killer while struggling with the recent death of his wife.  In the third episode of *Cross*, Alex Cross returns from a difficult day at work and, immersed in memories of his wife, calls in to a local all-request radio show called "The Love Zone," which they used to listen to together.  Cross opens up about his grief to the smooth-voiced male host, identified as "Vaughn Pope," before requesting an R&B song and falling asleep.

Plaintiff Maurice Watts ("Plaintiff"), the host of an R&B music radio show in New York City called "The Love Zone" now brings this action claiming that the radio call-in scene in *Cross* infringed and diluted his federally registered mark, constituted false association, and violated New York common law trademark and unfair competition law.  He does so even though the radio show in the entirely fictional *Cross* series is obviously not a depiction of Plaintiff or his radio show.  The scene at issue involves a fictional radio show broadcast from a different city, has a host with a different name and voice, and has a different format (call-in dedications).

Even accepting Plaintiff's allegations as true for this motion, his claims fail.  Plaintiff cannot overcome the robust First Amendment protections accorded to the use of trademarks in expressive works.  In such cases, federal trademark and equivalent state law claims are routinely dismissed as a matter of law unless the defendant's use either "has no artistic relevance to the

underlying work whatsoever," or "explicitly misleads as to the source or the content of the work." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). Plaintiff does not, and cannot, plead either element here. His claims thus fail as a matter of law, and should be dismissed with prejudice. (Section I, infra).

Even if the *Rogers* test did not dispose of Plaintiff's claims in their entirety (as it does), each of his claims would still fail for several independent reasons. *First*, he does not plausibly plead likelihood of confusion, as required for each of his federal and state trademark claims, false association claim, and unfair competition claim (Section II.A, infra). *Second*, he does not plead damages proximately caused by Defendants' use, as required for his false association claim (Section II.B, infra). *Third*, he fails to plead that his mark is sufficiently famous to be entitled to a cause of action for dilution (Section II.C, infra). *Finally*, he fails to plead bad faith as required for his New York unfair competition law claim (Section II.D, infra).

Defendants' motion to dismiss should be granted with prejudice.

## FACTUAL BACKGROUND

### A.    The Parties

Plaintiffs Maurice Watts ("Plaintiff") is a New York-based radio DJ, who has hosted a radio program called "The Love Zone" since the early 1980s. Complaint ("Compl.") ¶¶ 7, 15. Watts' radio program is a "well-known radio show in New York City" and broadcasts via WHCR 90.3 FM. *Id.* Ex. C at 1. Plaintiff plays "classic smooth R&B love ballads from the past." *Id. See also* Ex. C at 2 ("[Plaintiff's] Love Zone keeps alive the smooth old-school R&B love ballads from days long past" and airs "in New York City" on "WHCR 90.3FM—NY").[2] Plaintiff has a low, smooth vocal delivery, and uses the professional moniker "The Voice." *Id.*

---

[2] See also https://whcr.org/discography/the-love-zone/ (last visited Dec. 15, 2025).

¶ 16.  He has held a registered trademark to the mark "The Love Zone" for "a continuing music show broadcast over radio and [I]nternet" since November 8, 2016.  *Id.* Ex. A.

Paramount and Amazon Studios produced the television series *Cross*, which is available for streaming via the Amazon Prime streaming platform.

### B.    The *Cross* Scene at Issue

*Cross* is a scripted television series produced by Defendants based on the bestselling Alex Cross novels by author James Patterson.  It follows the investigations of brilliant forensic psychologist and Washington, DC Metro Detective Alex Cross as he works to solve difficult crimes and protect his family, all the while struggling with grief over the recent murder of his wife.  The first season of Cross became available for streaming through Amazon Prime on November 14, 2024.  Compl. ¶ 18.

This case concerns a single scene in Season 1, Episode 3 (the "Episode") of *Cross*, which begins at about 26 minutes in and lasts for approximately six and a half minutes (the "Call-In Scene").  Compl. ¶ 18.[3]  In the Call-In Scene, Alex Cross is shown arriving home after a day at work to the sounds of a local radio show, "The Love Zone," playing.  Ex. 1 at 25:56-26:37.  Over slow instrumental jazz, the show's host, the deep-voiced and fictionally named "Vaughn Pope," reminds his audience that the show is "all requests, all the time" and "you pick the songs, I just press play."  *Id.* at 26:38-27:06.  Cross, overcome with memories of his wife, calls in, using a pseudonym "Isaiah."  *Id.* at 27:07-27:19.  Cross tells the host that he's requesting for his "wife Maria" who "put me on to the Zone."  *Id.* at 27:20-27:29.  *See also* Compl. ¶ 18 ("the [radio] program is depicted as one the protagonist and his late wife listened to").  Cross explains that it

---

[3] Season 1, Episode 3 of Cross, attached as Exhibit 1 to the Declaration of Elizabeth A. McNamara ("Ex. 1"), is referenced and relied upon in the Complaint and therefore incorporated by reference.  *See, e.g.*, Compl. ¶¶ 18, 30, 35, Ex. B.

would have been their anniversary that day, but she "passed away." Ex. 1 at 27:30-27:43. He describes how "we would listen to your show every week, grab our cocktails, cuddle up on the couch … I haven't been able to tune in since she was killed but, today it's our anniversary so, I thought, let me just …." *Id*. at 27:43-28:19. After Cross explains to the host that his wife was murdered "a little over a year" prior, the host asks how he's "holding up," and Cross tells him that "some days are bad, other days are worse" and he doesn't "know how to say goodbye." *Id*. at 28:20-28:49. The host and Cross continue to talk about Cross's "happy memories" with his wife, and the host offers words of comfort. Finally, Cross requests the song "Love Me Still" by Chaka Khan, which plays for a few moments before the scene ends. *Id*. at 28:50-30:20.

### C.    The Complaint

Plaintiff filed this action on October 18, 2025, asserting six causes of action arising from the use of the name "The Love Zone" for the radio program depicted in the Call-In Scene: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) False Designation Of Origin under 15 U.S.C. § 1125(a); (3) Trademark Dilution under 15 U.S.C. § 1125(c); (4) Common Law Trademark Infringement under New York law; (5) Unfair Competition under New York law; and (6) for Declaratory and Injunctive Relief.[4]

Plaintiff alleges that Defendants infringed and diluted his registered trademark "The Love Zone," and falsely implied sponsorship or endorsement, because the Call-In Scene involved a radio program called "The Love Zone" with a similar-voiced (but differently named) host. Compl. ¶¶ 18-19. Plaintiff alleges that after watching the Call-In Scene, "listeners and members of the public contacted Plaintiff via phone, text, and email congratulating him on his

---

[4] "Declaratory judgments and injunctions are remedies, not causes of action." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010).

4

'Amazon/Paramount deal' and presumed collaboration with Cross." *Id.* ¶ 21. However, the "[r]epresentative examples" attached to the Complaint are correspondence from friends who claim they initially mistook the "Vaughn Pope" host in the Call-In Scene for Plaintiff before realizing it was not him. *See id*. Ex. C at 1, 2. Plaintiff also alleges he has been "damaged," but does not specify how. *Id*. ¶¶ 32, 40. Plaintiff seeks declaratory and injunctive relief, as well as statutory damages and fees. *Id*. ¶¶ 45-46, pp. 7-8.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (alteration in original); *see also LaFaro v. N.Y. City Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009) ("We are not bound to accept as true legal conclusions couched as factual allegations"). Where the well-pleaded facts do not "plausibly give rise to an entitlement to relief," dismissal is appropriate. *Iqbal*, 556 U.S. at 679. In considering a 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Early disposition of cases like this one, arising from the content of an expressive work, is particularly appropriate as the threat of protracted litigation can chill the exercise of this constitutionally protected activity.  *See Medina v. Dash Films, Inc*., No. 15-CV-2551 (KBF), 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016) ("The First Amendment protects defendants' right to artistic expression by extinguishing the claims plaintiff has brought in this action."); *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 177–84 (S.D.N.Y. 2012).

Here, the Complaint cannot withstand dismissal because the facts alleged and incorporated by reference do not support a plausible claim for relief under the Lanham Act or either of the state causes of action asserted.  Instead, they establish that the Call-In Scene—even accepting *arguendo* that it was meant to invoke Plaintiff and his "The Love Zone" trademark—is protected editorial content under the First Amendment, and Plaintiff cannot satisfy the demanding *Rogers* test applied to claims arising out of artistic or editorial content.  Moreover, even if the *Rogers* test did not apply, the Complaint fails to plausibly plead the elements of its claims.

## I.    THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE USE AT ISSUE IS RELEVANT TO DEFENDANTS' EXPRESSIVE SPEECH AND NOT EXPLICITLY MISLEADING AS TO ITS SOURCE

Plaintiff's alleged claims violate the First Amendment.  As the Second Circuit instructs: When a Lanham Act claim arises out of editorial or artistic speech—and even when "artistic and commercial elements" are "inextricably intertwined"—courts must balance the aims of the Lanham Act against the protections for expressive works guaranteed by the First Amendment. *Rogers*, 875 F.2d at 998 ("Because overextension of Lanham Act restrictions … might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict.").

Under *Rogers*, the use of a name or likeness in an expressive work is constitutionally

6

protected unless it (1) "has no artistic relevance to the underlying work whatsoever" or (2) "explicitly misleads as to the source or the content of the work."  875 F.2d at 999.  The court in *Rogers* applied this test to both Lanham Act and state right of publicity claims arising from a movie title naming the plaintiff.  *Id.* at 1001–02, 1004–05.  But courts in this and other circuits have subsequently made clear that the test applies broadly to any Lanham Act claims, as well as their state law counterparts, arising from the use of any mark, name, or likeness in the titles or content of expressive works.  *See, e.g.*, *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) (noting *Rogers* is now "generally applicable to Lanham Act claims against works of artistic expression"); *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 183–84 (*Rogers* applied to use of Louis Vuitton mark in film); *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 330–40 (S.D.N.Y. 2023) (*Rogers* applied to depiction of fictional business with a name and trade dress highly similar to plaintiff's in television series and associated promotional materials); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013) (*Rogers* applied to use of plaintiff's likeness in video game), *abrogated on other grounds as recognized by Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024); *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (11th Cir. 2012) (*Rogers* applied to use of trademarked sports uniform in paintings).

The Supreme Court's 2023 decision in *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 160 (2023), does not change this analysis when, as here, the alleged use is not source identifying.  *Jack Daniel's* involved a company's use of the Jack Daniel's trade dress and the playful name "Bad Spaniels" for a dog toy.  *Id.*  In its decision, the Court noted that "the *Rogers* test has applied only to cases involving 'non-trademark uses'—or otherwise said, cases in which 'the defendant has used the mark' at issue in a "non-source-identifying way,'" but "has not

insulated from ordinary trademark scrutiny the use of trademarks *as trademarks*." *Id.* at 155–56 (emphasis added).  Because the toymaker had used the "Bad Spaniels" mark and similar marks on product hangtags and otherwise "as trademarks," the Court concluded, the *Rogers* test did not apply.  *Id.* at 160–63.  Since this narrow ruling, courts have continued to consistently apply *Rogers* to claims arising from the use of marks and likenesses as *part of* creative works, as opposed to "as trademarks" to identify source in the marketplace.  *See, e.g.*, *JTH Tax LLC*, 694 F. Supp. 3d at 330–40 (applying *Rogers* to use of a mark in television show and associated promotional materials); *Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025) (use of likeness in television show); *Down to Earth Organics, LLC v. Efron*, No. 22-cv-06218 (NSR), 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) (use of mark in title of television series); *Haas Automation, Inc. v. Steiner*, 750 F. Supp. 3d 1107 (C.D. Cal. 2024) (use of marks in photographs in a memoir); *Pepperdine Univ. v Netflix, Inc.*, No. 2:25-cv-01429-CV (ADSx), 2025 WL 632983 (C.D. Cal. Feb. 26, 2025) (use of mark in a television series).

Finally, since the *Rogers* test requires an objective examination of the allegedly infringing use, courts regularly apply it to dismiss Lanham Act and equivalent state law claims at the pleadings stage.  *See, e.g.*, *LMNOPI v. XYZ Films, LLC*, 449 F. Supp. 3d 86, 94–95 (E.D.N.Y. 2020) (dismissing false endorsement claim as a matter of law under *Rogers*); *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 442 (S.D.N.Y. 2019) (dismissing false endorsement claim with prejudice pursuant to *Rogers*); *JTH Tax LLC*, 694 F. Supp. 3d at 330–40 (dismissing trademark and trade dress infringement claims under *Rogers*); *Medina*, 2016 WL 3906714, at *4 (dismissing federal trademark and New York unfair competition claims under *Rogers*, and noting "'[t]he same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law'") (quoting *Yankee*

*Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992)); *Louis Vuitton*

*Malletier S.A.*, 868 F. Supp. 2d at 183–84 (dismissing federal trademark infringement under

*Rogers*, as well as New York unfair competition claim "based on the same permissible

conduct"); *Down to Earth Organics, LLC*, 2024 WL 1376532, at *9 (dismissing federal

infringement and false endorsement claims "with prejudice" for failure to plead a "plausible

claim of likelihood of confusion, much less a 'particularly compelling' one" as required by

*Rogers*).

A.    The *Rogers* Test Applies to the Call-In Scene

There can be no dispute that the Call-In Scene in *Cross*, a scripted and fictional television

series based upon a successful series of novels, is expressive material and not mere commercial

speech.  As a result, the *Rogers* test unquestionably applies.  *See Louis Vuitton Malletier S.A.*, 868

F. Supp. 2d at 183–84 (use of mark in film); *JTH Tax LLC*, 694 F. Supp. 3d at 330–40 (use of

mark in television series).  And Plaintiff does not allege that Defendants made any source-

identifying use of his mark or likeness "as trademarks," making *Jack Daniel's* inapplicable.  599

U.S. at 155–56.  *See also Pepperdine Univ.*, 2025 WL 632983, at *4 (*Rogers* applied since the

defendant's "use of the [plaintiff's] Waves Marks" within its television series "is simply

expressive and is a plot point in the series").  Plaintiff is also not mentioned in any source-

identifying title cards or end credits.  *See id.* at **4–5 (*Rogers* applied where title cards

accurately disclosed show's producers); *see also* Ex. 1 at 00:45-00:55; 54:48-55:02; 55:41-56:37.

Accordingly, the First Amendment protects Defendants' use unless Plaintiff can plead that it had

no artistic relevance to *Cross* or was explicitly misleading.  He cannot, as set out below.

B.    The Use of "The Love Zone" and Low-Voiced Radio Host in the Call-In
       Scene Is Artistically Relevant

"The threshold for 'artistic relevance' is purposely low and will be satisfied unless the

use 'has no artistic relevance to the underlying work whatsoever.'"  *Showtime Networks, Inc*, 394 F. Supp. 3d at 442 (quoting *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 178).  "[T]he level of relevance merely must be above zero."  *Id.* (quoting *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008), *abrogated on other grounds as recognized by Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024)).  In *Rogers*, the Second Circuit held that the artistic relevance prong was satisfied where Ginger Rogers' name was used in the title of a film that was not actually about her.  875 F.2d at 1001.  The court reasoned that "the film's fictional protagonists … are known to their Italian audience as 'Ginger and Fred.' Moreover, the title has an ironic meaning" rooted in the contrast between the glamor Rogers represented and the banality of the contemporary television program depicted in the film.  *Id.* But a use need not intentionally reference the plaintiff to be relevant.  In *JTH Tax LLC*, for example, the court held that a television show's depiction of a fraudulent tax preparation company called "Sweet Liberty Tax Services," styled with "gaudy and shabby appropriation of patriotic imagery," was relevant to "highlight[] [the company owners'] hypocrisy and the tawdry nature of their crimes," regardless of whether the intention was to reference the plaintiff's similarly trade-dressed company "Liberty Tax."  694 F. Supp. 3d at 333.  *See also Pepperdine Univ.*, 2025 WL 632983, at *4 (use of name "Waves" for fictional professional basketball team in television series was relevant because the name was both a "nod to the real-life Lakers" and a reference to the Southern California beach "vibe," regardless of whether it referenced plaintiff's team the Pepperdine Waves).

Here, the depiction of a radio show with a deep-voiced host and the name "The Love Zone" in the Call-In Scene was artistically relevant to the series' expressive purpose, even assuming—notwithstanding the many obvious differences—that this actually referred to

Plaintiff's mark.  The Call-In Scene, in the context of an entirely fictional work, shows Alex

Cross emotionally triggered by hearing a romantic radio show he and his recently deceased wife

used to listen to "every week."  Ex. 1 at 27:43-28:19. Cross—a hardened detective investigating

a serial killer—is able to express his emotional vulnerability to the deep and smooth-voiced,

comforting host.  The name "The Love Zone" echoes Cross's fond memories of times listening

to the show with his wife while "cuddle[d] up on the couch," while the smooth music and deep

voice of the host soothe him into admitting that he doesn't "know how to say goodbye."  *Id.* at

28:20-28:49.  Moreover, the "quiet storm" R&B music format of both the fictional Washington

DC radio show and Plaintiff's own New York City radio show is culturally relevant to *Cross*, a

show centered on Black characters.[5]  In light of this, Plaintiff cannot plausibly argue that the use

---

[5] *See also* "Quiet Storm," WIKIPEDIA.ORG, available at https://en.wikipedia.org/wiki/Quiet_storm (last visited Dec. 15, 2025).  Indeed, while Watts presents his R&B format and smooth voice as highly distinctive, this is actually an extremely common and well-established format—akin to the "wild" shock jock or air-horn-blowing hip-hop radio DJ. *See id.*; *see also* https://slowjam.com/ (last visited Dec. 15, 2025); http://www.global995fm.com/show/the-quiet-storm/ (last visited Dec. 15, 2025); https://www.star945.com/author/the-quiet-storm-with-stacy-d/ (last visited Dec. 15, 2025).  In fact, WBLS-NY's long-running "Quiet Storm" radio program was previously hosted by a DJ named *Vaughn* Harper and involved call-in requests and dedications—much like the radio show in the Call-In Scene. *See* "Vaughn Harper, WBLS & 'Quiet Storm' Pioneer, Dies at 71," BILLBOARD.COM (Jul. 11, 2016), https://www.billboard.com/music/rb-hip-hop/vaughn-harper-dead-wbls-quiet-storm-7431313 (last visited Dec. 15, 2025).  "The Love Zone" is also a common name, with at least a dozen radio programs using it, and many of them for similar smooth R&B music formats.  *See, e.g.*, The Love Zone|WTLZ at https://thelovezonemusic.com/ (online radio broadcasting smooth R&B and classic soul) (last visited Dec. 15, 2025); The Love Zone at https://liveonlineradio.net/the-love-zone (online station broadcasting soulful R&B and love songs) (last visited Dec. 15, 2025); The Love Zone at https://mustbe5radio.com/shows/the-love-zone/ (online radio show broadcasting R&B throwback hits) (last visited Dec. 15, 2025); The Love Zone at https://dodgeradio.net/shows/the-love-zone (online radio show broadcasting love tunes) (last visited Dec. 15, 2025); The Love Zone at https://keepone.net/radio/k169644/the-love-zone (online radio broadcasting R&B slow jams) (last visited Dec. 15, 2025); The Love Zone at https://myradiobox.com/us/radio/the-love-zone-251765 (online radio broadcasting classic and contemporary R&B) (last visited Dec. 15, 2025); The Love Zone at https://radiostay.com/station/126102 (online radio broadcasting R&B) (last visited Dec. 15, 2025); The Love Zone|KTLZ Houston at https://radiostay.com/station/86743 (online radio broadcasting R&B) (last visited Dec. 15, 2025); The Love Zone on The Chill Zone at https://www.iheart.com/podcast/269-tigress315radio-86830548/episode/the-love-zone-on-the-chill-305904144/ (online radio broadcasting R&B) (last visited Dec. 15, 2025).  While this context is not necessary to resolve Defendants' Motion, the Court can take judicial notice of the existence of these publicly available websites for similar radio programs.  *See, e.g.*, *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n. 8 (2d Cir.2000) (taking judicial notice of "well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment"); *Boarding Sch. Rev., LLC v. Delta Career Educ. Corp*., No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (courts "generally ha[ve] the discretion to take judicial notice of internet material"); *BSH Hausgeräte, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 670 n.1 (S.D.N.Y. 2017) (A district court "has the discretion to take judicial notice of internet materials.") (citation omitted).

of the mark "The Love Zone" and a deep-voiced radio DJ bear no artistic relevance to the Episode.

### C.    Defendants Did Not Explicitly Mislead as to the Source of *Cross*

Since Defendants' use was relevant to *Cross*, it "is unprotected only if it 'explicitly misleads as to the source or content of the work.'" *Showtime Networks, Inc.*, 394 F. Supp. 3d at 443 (quoting *Rogers*, 875 F.2d at 999). To satisfy this prong, "the finding of likelihood of confusion must be *particularly compelling* to outweigh the First Amendment interest recognized in *Rogers*." *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993) (emphasis added). And, as here, "[w]hen the infringing use is a fictional product or service shown or referenced in a work of fiction, the relevant product for the purpose of comparison to the senior use is the work of fiction itself rather than the fictional product or service depicted within that work." *JTH Tax LLC*, 694 F. Supp. 3d at 336. *See also Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 702 (7th Cir. 2014) (where the challenged use at issue is within a fictional work, the relevant "likelihood of confusion" is "between the senior user's product and the junior user's creative work—not any fictional product therein."). Thus, the question here is not whether the radio show in the Call-In Scene is misleadingly similar to Plaintiff's radio show, but whether Defendants' use explicitly misled consumers so as to create a "particularly compelling" likelihood of confusion as to *the source of Cross*. *Twin Peaks*, 996 F.2d at 1379. Defendants' use does not meet this requirement, warranting dismissal.

Initially, *Rogers* and its progeny have held consistently that even a direct and intentional reference to a mark or likeness will not remove a use from the First Amendment's protections absent "explicit indication that [the plaintiff] endorsed the film or had a role in producing it," *even if* some viewers might have been mistaken as to the mark or likeness-owner's involvement. 875 F.2d at 1001. This is because "that risk of misunderstanding, not engendered by any overt

12

claim in the [work], is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." *Id.*  Thus, numerous cases have found that even express or intentional use of marks and likenesses within creative works are not explicitly misleading.  *See, e.g.*, *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 183–84 (portrayal of knock-off Louis Vuitton luggage in a film, where the luggage was not described as knock-off but referred to by a character as "'Lewis' Vuitton," (*id.* at 178) was not explicitly misleading); *Brown*, 724 F.3d at 1245 (use of famous football player's likeness in a video game was not explicitly misleading, since "the use of a mark alone is not enough to satisfy this prong of the Rogers test"); *Hara v. Netflix, Inc.*, No. 2:23-CV-03456-RGK-AS, 2023 WL 6812769, at *1 (C.D. Cal. Aug. 23, 2023) ("merely including [plaintiff's] likeness in the Series and Teaser," coupled with "allegations regarding 'the impact of the use'" were "insufficient to show that a content creator explicitly misled consumers").

Here, Plaintiff pleads that his mark and likeness appeared in the Call-In Scene, but even assuming the radio show in the Call-In Scene confused some viewers as to its association with Plaintiff, this would not be enough.  Plaintiff must plead that Defendants explicitly misled viewers into believing that he and/or his trademarked radio show were the origin of, or sponsored or endorsed, the *Cross* series, *JTH Tax LLC*, 694 F. Supp. 3d at 336, and he pleads no facts supporting such a conclusion.  Nor could he, since *Cross* is identified as a crime thriller "[b]ased on NY Times Bestselling author James Patterson's #1 hero, … Alex Cross" and nowhere mentions Plaintiff as having any association with the television series (or the underlying book series).  *See* "Cross:  Season 1, Amazon Prime," available at https://www.amazon.com/Cross-Season-1/dp/B0D6X7ZZHC (last visited Dec. 15, 2025); *See also, generally*, Ex. 1.  This is categorically insufficient for the use to be explicitly misleading under *Rogers*.

13

Indeed, while the Call-In Scene uses the same "The Love Zone" name, it makes clear in numerous ways that the show depicted is not Plaintiff's:  It uses a different host name (Vaughn Pope), different local radio market (Washington, DC), and different format (call-in dedications). *See also Brown*, 724 F.3d at 1246–47 (finding that "changes made to Brown's likeness" in the video game at issue "could only make consumers less likely to believe that Brown endorsed Madden NFL" and thus "cannot possibly satisfy the second prong of the *Rogers* test.").  These differences make any theory that the use was intentionally misleading facially implausible. Moreover, the Episode's title cards and end credits disclose the source of the series—famed author James Patterson and Defendants' studios—and do not mention Plaintiff. Ex. 1 at 00:45-00:55; 54:48-55:02; 55:41-56:37.  *See also Down to Earth Organics, LLC*, 2024 WL 1376532, at *6 (where title credits and end credits in a streaming series "clearly identifie[d] the producers of the Series," use of same phrase as plaintiff's mark in the title was not explicitly misleading); *Medina*, 2016 WL 3906714, at *5 (dismissing under *Rogers* where promotional materials for series prominently credited the actual producers, and the "complaint [was] devoid of concrete allegations that defendants attempted to suggest that plaintiff's duo produced" it).  In short, Defendants' use of Plaintiff's mark in *Cross* was not, on its face, misleading as to the source of the Series.

As a consequence, the Court need not even reach an analysis of the eight *Polaroid* factors[6] used by courts to evaluate likelihood of confusion.  *See Roberts v. Bliss*, 229 F.  Supp. 3d 240, 253 (S.D.N.Y. 2017) (once the court has determined "that it is implausible that a viewer

---

[6] The eight *Polaroid* factors are:  "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market."  *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 110 (2d Cir. 2023) (citation and internal quotation marks omitted).

would be confused" as to whether a plaintiff endorsed the goods at issue, the court "need not 'slavishly recite the litany of all eight *Polaroid* factors.'") (quoting *Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 654 (2d Cir. 1988).  Nevertheless, an evaluation of these factors only confirms that Plaintiff has not, and cannot, plead the necessary "particularly compelling" likelihood of confusion necessary to satisfy *Rogers*.  *Twin Peaks*, 996 F.2d at 1379.

      ***First***, on the strength of Plaintiff's mark, this inquiry "focuses on 'the distinctiveness of the mark, or more precisely, its tendency to identify the goods' as coming from a particular source."  *Museum of Mod. Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 373 (S.D.N.Y. 2018) (cleaned up) (citation omitted).  A strong mark is not dispositive in a *Rogers* analysis, *see JTH Tax LLC*, 694 F. Supp. 3d at 336 (use was not misleading despite strong mark).  Here, Plaintiff fails to allege his mark for "The Love Zone" has any particular distinctiveness, aside from bald allegations that his radio program has attracted "a loyal audience," industry "recognition," and "substantial goodwill and secondary meaning."  Compl. ¶ 15-16.  *See Down to Earth Organics, LLC*, 2024 WL 1376532, at *7 ("conclusory assertions" about a mark's strength are insufficient to tilt the first factor in plaintiff's favor).  To the contrary, Plaintiff's mark is a generic phrase and evocative of its product—a destination for listening to romantic music.  *See RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120–21 (2d Cir. 2022) ("When a mark so clearly evokes the claimed virtues of the product it references, that mark … is weak under the trademark law").  Indeed, an online search shows a crowded field of more than a half dozen radio shows of the *same R&B music format* (or similar romantic music genres) using the very same name.[7]  This all points to a weak mark.

---

[7] *See* n.5, supra.

***Second***, the second factor "looks to whether the similarity of the marks is likely to provoke confusion among prospective purchasers," *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir. 1991), "consider[ing] not only the marks' physical resemblance, but also the contexts in which they appear." *JTH Tax LLC*, 694 F. Supp. 3d at 336. *See also Fortres*, 763 F.3d at 705 (even identical marks may not be sufficiently similar to result in likelihood of confusion, since "[t]rademark law protects the source-denoting function of words used in conjunction with goods and services in the marketplace, not the words themselves"). Applying this analysis, courts have consistently held that a use of an identical mark is still not "similar" under the second factor where the "purpose" of the secondary use is expressive, not business-identifying. *See JTH Tax LLC*, 694 F. Supp. 3d at 336 (second factor weighed for defendant where use of mark that "closely resembles Plaintiff's marks" was for fictional business in television program); *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 481 (S.D.N.Y. 2020) (same where defendant's "purpose" in using "Humvee" mark was not to sell vehicles but "to create realistically simulating modern warfare video games"). The same is true here, where Defendant's use was for another radio music show, but was in the context of a scripted television Series.

***Third***, on the "proximity of the products and their competitiveness with one another," Plaintiff alleges no "overlap between 'the manner in which the products are advertised, and the channels through which the goods are sold,'" favoring Defendants. *JTH Tax LLC*, 694 F. Supp. 3d at 335, 337. *See also AM Gen. LLC*, 450 F. Supp. 3d at 481.

***Fourth***, "the 'bridge the gap' factor contemplates 'the likelihood … or the consumer's perception of the likelihood that Plaintiff would enter Defendants' market." *Down to Earth Organics, LLC*, 2024 WL 1376532, at *8. Plaintiff does not and cannot plausibly allege that he

16

is likely to, or would be expected to, "bridge the gap" by creating scripted television dramas featuring scenes incorporating his radio show and persona. *See id.* (fourth factor weighed for defendant where there were "no factual allegations" as to likelihood of bridging the gap).

**Fifth**, in the *Rogers* context evidence of actual confusion must be substantial, since "[the] mark owner[]s must accept 'some' confusion when outweighed by free speech interests." *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 184 n.19 (quoting *Rogers*, 875 F.2d at 1001). *See also JTH Tax LLC*, 694 F. Supp. 3d at 338 ("in a case governed by *Rogers*, evidence of actual consumer confusion may not be sufficient to establish an infringement claim"). Here, Plaintiff has not offered any plausible allegations of actual consumer confusion, much less substantial evidence. Instead, he makes conclusory claims that "listeners and members of the public" who saw the *Cross* Episode believed he had made a "deal" with Defendants, but in support offers only evidence of personal friends who believed the DJ in the Call-In Scene sounded like him, before quickly realizing it wasn't. *See* Compl. ¶ 12, Ex. C. This is insufficient evidence of actual confusion as to the source of *Cross*. *See also AM Gen. LLC*, 450 F. Supp. 3d at 482 (survey showing 16% of viewers were confused as to plaintiff's association with defendant's video game was insufficient to overcome *Rogers*); *Brown*, 724 F.3d at 1245 (*Rogers* protected use of football player's likeness in a video game even given consumer survey indicating some confusion as to endorsement).

**Sixth**, a consideration of whether the defendant used the plaintiff's mark "in bad faith" asks whether the use was made with "'intent to deceive.'" *JTH Tax LLC*, 694 F. Supp. 3d at 339 (citation omitted). Here, as in *JTH Tax LLC*, even assuming arguendo that the use of Plaintiff's mark was "deliberate," the Complaint "does not plead any facts suggesting that Defendants

17

sought to attract viewers by associating" *Cross* with Plaintiff's local New York City radio show. *Id*.

**Seventh**, the "quality of the products" factor looks to whether "the junior user's product is of inferior quality." *Id*. (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995)). Where, as here, the two products are fundamental dissimilar (a music radio program and a police investigation television drama), such that "there is no basis to argue" that the Defendants' use could harm the consumer perception of Plaintiff's product, "this factor weighs in Defendants' favor." *Id*. at 340.

**Eighth**, courts have held the consumer sophistication factor weighs in a defendant's favor where, as here, the use is in the content of fictional work. *See Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 184 n.19 ("[M]oviegoers are sophisticated enough to know that the mere presence of a brand name in a film, … does not indicate that the brand sponsored the movie."); *AM Gen. LLC*, 450 F. Supp. 3d at 484 ("There is no reason to believe that video game players are any less astute[.]").

In sum, the eight *Polaroid* factors, measured together, weigh definitively in favor of Defendants. Plaintiff has not pled even a plausible likelihood of confusion, much less the "particularly compelling" likelihood necessary to overcome *Rogers*. *Twin Peaks*, 996 F.2d at 1379. Given that Plaintiff has not plead (nor could he) that the Call-In Scene had "no artistic relevance" to *Cross* and he fails to plead that Defendants explicitly misled viewers as to the source of the *Cross* series, the Complaint cannot overcome the First Amendment protections enshrined in *Rogers*, and should be dismissed on those grounds. *Id*.

## II.    PLAINTIFF FAILS TO STATE THE ELEMENTS OF HIS CLAIMS

Even if *Rogers* did not provide sufficient basis to dismiss the Complaint in its entirety, Plaintiff's claims would still fail because he does not plausibly allege their necessary elements for the reasons set out below.

### A.    Plaintiff's Federal and State Trademark Infringement, False Association, and Unfair Competition Claims Fail Because He Does Not Plausibly Plead Likelihood of Confusion

Any claim for trademark infringement or false association, at its core, requires a plaintiff to plead and prove that "the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (citation and internal quotation marks omitted); *JTH Tax LLC*, 694 F. Supp. 3d at 328 ("The standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32" with respect to the likelihood of confusion requirement) (quoting *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 228 (S.D.N.Y. 2022)).  Likelihood of confusion is also required to plead common law trademark infringement and unfair competition claims under New York law.  *See Tiffany*, 600 F.3d at 101 n.6 (2d Cir. 2010) ("causes of action [for trademark infringement] under both the Lanham Act and New York State common law … are composed of the same elements"); *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 381 (S.D.N.Y. 2008) (same elements for New York unfair competition claim based on trademark infringement). Moreover, "satisfaction of the likelihood-of-confusion standard requires a *probability* of confusion, not a mere possibility."  *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (emphasis added) (citation and internal quotation marks omitted).

To survive a motion to dismiss, a likelihood of confusion must be plausible from the facts alleged, and "[i]n the context of a motion to dismiss, courts have disposed of trademark claims

where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 183. *See also Roberts*, 229 F. Supp. 3d at 252–53 (dismissing false endorsement claim where theory of likelihood of confusion was "implausible," in part because the defendant's use was an "obvious[ ] modification" and "conscious departure" from plaintiff's work); *Boarding Sch. Rev., LLC*, 2013 WL 6670584, at \*5 (dismissing trademark infringement and unfair competition claims where "Defendants have failed to allege plausibly a likelihood of confusion"); *Fortres*, 763 F.3d at 706 (affirming dismissal of trademark claims arising from use of mark within fictional work for "fail[ure] to plausibly allege confusion").

As set out above, Plaintiff has not, and cannot, plausibly allege a likelihood of confusion as to the origin or sponsorship of *Cross*. *See supra* at Section I.C. Indeed, given the obvious differences between Plaintiff's radio show and the one depicted in the Episode, no reasonable viewer could believe for more than a passing second that Plaintiff was personally involved in *Cross* at all, much less that he sponsored or endorsed it. And Plaintiff's proffered evidence of "confusion" only confirms this, as it shows that friends realized within moments that the Episode did *not* actually portray him. *See generally*, Compl. Ex. C. The implausibility of confusion is an independent basis to dismiss Plaintiff's federal and state trademark infringement, false association, and unfair competition claims.

## B.    Plaintiff's False Association Claim Fails Because He Does Not Plead Proximate Injury

Plaintiff's false association claim under 15 U.S.C. § 1125(a) fails for the additional reason that he has not alleged facts in support of a plausible theory of proximate harm. The Supreme Court has held that "a plaintiff suing under § 1125(a) ordinarily must show …

economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 133 (2014). And, "like any other element of a cause of action, [proximate causation] must be adequately alleged at the pleading stage in order for the case to proceed." *Id*. at 134 n.6. Thus, "in order to state a plausible false association claim based on the deceptive and misleading use of marks, including a false designation of origin claim, under the Lanham Act, the plaintiff must plead factual allegations from which it may reasonably be inferred that it sustained" this kind of proximate economic or reputational injury. *Millennium Access Control Tech., Inc. v. On the Gate, LLC*, No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800, at *12 (E.D.N.Y. Feb. 14, 2017). "Conclusory" allegations that a secondary use "creat[ed] confusion in the market place" about the source of the goods at issue are insufficient to meet this pleading requirement. *Id*. at *13 (dismissing false association claim on these grounds). *See also MiMedx Grp., Inc. v. DBW Partners LLC*, No. CV 17-1925 (JDB), 2018 WL 4681005, at *9 (D.D.C. Sept. 28, 2018) (dismissing Section 1125(a) claim where plaintiff "alleges that [defendant] made false or misleading statements, but it does not connect these statements to a competitive injury related to [plaintiff's] commercial interests"). Here, Plaintiff fails to offer non-conclusory allegations in support of either economic or reputational harm or proximate causation. Instead, he alleges only that he has suffered "loss of control over his brand [and] damage to reputation and goodwill," Compl. ¶ 23, and "has been damaged." Compl. ¶ 32. These conclusory, unsupported allegations are insufficient to state a claim.

### C.    Plaintiff's Dilution Claim Fails Because He Does Not Plead His Mark Is Sufficiently Famous

A claim for dilution under the Lanham Act is only available where the plaintiff's mark is famous. Indeed, "the element of fame is the key ingredient" in a dilution claim, *Savin Corp. v.*

*Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004), and "[c]ourts have 'generally limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public.'" *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018) (citation omitted). "[F]ame in niche markets" does not suffice to plead this element. *Id. See also Glob. Brand Holdings, LLC v. Church & Dwight Co., Inc.*, No. 17-CV-6571 (KBF), 2017 WL 6515419, at *3 (S.D.N.Y. Dec. 19, 2017) (pleading dilution "requires more than niche fame"). And a "failure to plausibly allege" the requisite level of fame "is fatal to [a] trademark dilution claim." *DigitAlb, Sh.a*, 284 F. Supp. 3d at 557 (citation omitted).

Plaintiff does not and cannot plead that his "The Love Zone" mark is "'almost universally recognized by the general public.'" *Id*. at 557 (citation omitted). Instead, he alleges that his radio show has a "loyal audience" and his "mark and persona have developed substantial goodwill and secondary meaning, especially within Black American communities and the broader listening public." Compl. ¶¶ 15-16. This is plainly insufficient to meet the high level of general fame required for a dilution claim. Plaintiff's dilution claim can be dismissed for this independent reason.

### D.    Plaintiff's New York Unfair Competition Claim Fails Because He Does Not Allege Bad Faith

In addition to the other elements of a Lanham Act claim, "[a] claim of unfair competition under New York law also requires evidence of defendant's bad faith." *Dooney & Bourke, Inc.*, 561 F. Supp. 2d at 381. In the trademark context, "'[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products.'" *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 163 (S.D.N.Y. 2011) (quoting *Star*

*Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 388 (2d Cir. 2005)), *aff'd*, 508 F. App'x 31 (2d Cir. 2013).  Importantly, "'[t]here is a considerable difference between an intent to copy and an intent to deceive.'"  *Id.* (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 117 (2d Cir.2009)).  Here, Plaintiff makes a single conclusory claim that Defendants acted "in bad faith," but alleges no facts supporting a conclusion that Defendants intended to deceive viewers by associating *Cross* with his radio show.  Compl. ¶ 42.  *See JTH Tax LLC*, 694 F. Supp. 3d at 339 (plaintiff "does not plead any facts suggesting that Defendants sought to attract viewers by associating *Better Call Saul*—a popular television show in its sixth season—with [plaintiff's] tax preparation business").  Indeed, the many distinguishing features between Plaintiff's radio show and the one featured in the Call-In Scene make any such inference utterly implausible.  Plaintiff's unfair competition claim fails for this reason as well.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  New York, New York
        December 17, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ Elizabeth A. McNamara
Elizabeth A. McNamara
Abigail B. Everdell
Latoya A. Tyson (*Pro Hac Vice* pending)
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
Email:   lizmcnamara@dwt.com
        abigaileverdell@dwt.com
        latoyatyson@dwt.com

*Attorneys for Defendants Amazon Studios LLC and Paramount Pictures Corporation (incorrectly named as Paramount Television Studios LLC)*

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS**

I hereby certify that the word count of this memorandum of law complies with the word limits of the Court's Local Civil Rule 7.1.  According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under the Court's Local Civil Rule 7.1 is 7707 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: December 17, 2025
New York, New York

By: /s/ Elizabeth A. McNamara
    Elizabeth A. McNamara